MAGALEI of Faleniu, AUPIU of Faleniu and
TUIAANA of Faleniu, Plaintiffs

v.

MAEA of Faleniu, Defendant

No. 15-1937

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Moepulou" in Faleniu]

January 23, 1939

ARTHUR A. MORROW, *Chief Justice;* LIUFAU, *Associate Justice;* and PULETU, *Associate Justice.*

DECISION AND DECREE

Heard at Fagatogo on December 19, 1938, Eddie being counsel for Aupiu and Magalei, Maea acting for himself.

The Court viewed the land involved prior to the trial.

The facts sufficiently appear in the opinion.

MORROW, *Chief Justice.*

The land designated Moepulou on the survey hereinafter referred to was surveyed by Maea and offered by him for registration as his property on November 5, 1937, the survey being filed with the offer to register. The offer to register was made pursuant to Section 74 of the Codification. The land is located in Faleniu. Objections to the proposed registration were filed by Aupiu, Magalei and Tuiaana. Shortly before the trial Tuiaana withdrew his objection.

■ The evidence clearly shows that the southeastern part of the surveyed area extending for 116 feet along the main road to Leone is the communal property of the Savea family of which family Aupiu is a member and for whom he acted in making his objection. There is no doubt from the evidence that at the time of the establishment of the Government in 1899, and for several decades previous thereto, the Savea family occupied and used this part of the surveyed land under a claim of ownership. Therefore it was Savea communal land under Samoan customs. See *Talo v. Poi*, No. 16-1937. The extension of the authority of the United States to the Island of Tutuila in 1899 did not, of course, affect private land titles. *Talo v. Poi*, No. 16-1937; *Salavea L. v. Ilaoa*, No. 2-1938. Since the establishment of the Government the Savea family has continued to use and occupy the land under a claim of ownership, and there was no evidence showing that it has parted with its title. Many members of the Savea family are buried in this area. There is a living fale and a cook house on it on the respective sites of which living fales and cook houses have been maintained by the Saveas for at least 39 years. The Saveas have plantations on it and have had for many years. There is no evidence to show that the Maeas ever made any claim to this part of the land occupied by the Saveas prior to October 1937 when the survey was made, except possibly a loose verbal claim some four or five years

36

ago, or that the Maeas ever interfered with the use and occupation of it by the Savea family.

The evidence also shows that the northeastern portion of the surveyed tract extending for 77 feet along the road to Leone is the property of Magalei. It has been used and occupied by the present Magalei under a claim of ownership for 53 years; and for many decades prior to the occupation of that portion of the land by the present Magalei it was occupied and used by former Magaleis under a claim of ownership. There are many old Magalei graves on the northeastern portion of the surveyed tract. Magalei has a guest fale on it on the site of which there have been Magalei fales for many years. Since for a great many years immediately preceding the establishment of the Government in 1899 the Magaleis had occupied and used the land under a claim of ownership, it was theirs by Samoan custom at that time. The extension of the authority of the United States to Tutuila in 1899 did not affect their title. The Magalei family has continued to occupy and use it under a claim of ownership during the entire period of the existence of the Government. There was no evidence to show that Magalei has parted with the ownership since the establishment of the Government. The Maeas as far as the evidence shows have never interfered with the possession by the Magaleis of this part of the surveyed tract, and made no claim to the land until the survey was made in October 1937 except possibly a mere loose verbal claim some four or five years ago.

An examination of the evidence convinces us that Maea is the owner of the western part of the surveyed tract except a small part on the south which is Savea property. The present Maea has occupied and used this part of the surveyed area under a claim of ownership since about 1925. He has occupied a fale on that part since that time, when he put a living fale up on the site occupied by his present liv-

ing fale. He has plantations on the land, and has had for a number of years. While there is a dispute in the evidence, we think it preponderates in favor of the view that this part of the surveyed land has been occupied and used under a claim of ownership by former holders of the Maea name or by Maea family members for a period antedating the establishment of the Government and extending up to the present time. Consequently that part of the surveyed area is Maea land.

In view of the evidence and the established principles of law applicable thereto the Court

ADJUDGES AND DECREES

(1) That that part of the surveyed tract bounded as follows is the communal family land of the Magalei family:

Beginning at a point two feet from the west side of the main road to Leone (which point is at the north end of a line extending 64 feet to a bath east of said road and having a bearing of 142° 43′) thence 262° 45′ for 88 feet 2 inches; thence 265° 44′ for 38 feet; thence 175° 44′ for 21 feet; thence 85° 44′ for 17 feet; thence 175° 44′ for 72 feet 6 inches; thence 85° 44′ for 31 feet; thence 72° 30′ for 100 feet; thence 342° 6′ for 77 feet back to the starting point.

(2) That that part of the surveyed tract bounded as follows is the communal family land of the Maea family:

Beginning at the westerly end of the boundary described as having a length of 38 feet with a bearing of 265° 44′ in (1) above thence 265° 44′ for 7 feet; thence 274° 29′ for 88 feet; thence 171° 51′ for 75 feet; thence 145° 52′ for 72 feet; thence 120° 39′ for 84 feet; thence 90° 00′ for 36 feet; thence 352° 00′ for 80 feet; thence 265° 44′ for 31 feet; thence 355° 44′ for 72 feet 6 inches; thence 265° 44′ for 17 feet; thence 355° 44′ for 21 feet to the place of beginning.

(3) That that part of the surveyed tract bounded as follows is the communal family land of the Savea family:

Beginning at the southerly end of the boundary described as having a length of 77 feet with a bearing of 342° 6' in (1) above, thence 252° 30' for 100 feet, thence 172° 00' for 80 feet; thence 270° 00' for 36 feet; thence 120° 39' for 31 feet; thence 82° 52' for 130 feet; thence 342° 6' for 116 feet to the place of beginning.

All bearings are magnetic. Reference is made to the survey which will be recorded.

The evidence clearly showed that the land above decreed to be the property of the Maea and the Savea are communal family lands. The only evidence as to whether the land decreed to be the property of Magalei is communal family land or the individual property of Magalei came from Magalei himself. It is true that he stated to the Court that it was his individual property, but a careful reading of all of his statements convinces us that it is communal family land. His statement that it was his individual property was a conclusion of the witness. We base our conclusion that it is matai land of the Magalei family and not his own individual property upon the following testimony of Magalei which appears in the record:

"C.J. Magalei I would like to ask you another question or two. Was this land Moepulou originally matai land of the Magalei family?

A. No, it is just the branch of Magalei which that Magalei came from and the second and myself the third one, no others.

Q. Does it belong as you claim to you as an individual or to your branch of the family?

A. To me and also my children.

Q. You mean your true children or your matai children, that is the members of the Magalei family over whom you are the matai?

A. Not only my children but the children of Magalei Aiono and Magalei Tau'ou, that is what I mean."

39

Section 3(1) of the Codification provides that ". . . so much of the Common Law of England as is applicable and not repugnant to or inconsistent with the Constitution and laws of the United States of America, and the laws of American Samoa, is declared to be in full force within American Samoa." In the case of *Talo v. Poi*, No. 16-1937 this Court decided that the Statute of 21 James I, Chap. 16, limiting actions for the recovery of real property to a period within 20 years after the accrual of the right of action was a part of the law of American Samoa, the phrase "English Common Law" in the abovementioned Section 3(1) being interpreted to include this ancient English Statute.

■ The evidence shows that the Savea family was in the actual open, notorious, visible, continuous, exclusive and hostile possession of the land above decreed to be theirs for a period of more than 20 years preceding the offer of Maea to register the land as his, and that during such period they claimed it as their own. While it is not necessary to a decision of this case, it is proper to say that, in view of these circumstances and the applicability of the above statute their title could now be sustained if there was any defect in it at the time of the beginning of such possession. See *Salavea L. v. Ilaoa*, No. 2-1938. And the title to that part of the surveyed tract decreed to be Magalei family land can likewise be sustained under the similar evidence applicable to it by the same line of reasoning. Loose verbal claims of ownership do not interrupt the running of the Statute. 2 *Corpus Juris* 94–5.

Maea, Magalei and Aupiu are each to pay court costs in the sum of eight dollars and thirty-four cents ($8.34) within 60 days.

The other Judges concur.